# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

STOCK FRAUD PREVENTION, INC.          CASE NO.:  9:11-cv-80764-KAM

     Plaintiff,

v.

STOCK NEWS INFO. LLC, SKYLINE
INVESTMENTS, INC., STEVEN KOIFMAN
and SCOTT WILDING

     Defendant.

_____/

### DEFENDANTS, STOCK NEWS INFO. LLC AND STEVEN KOIFMAN'S NOTICE OF MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE

Defendants, STOCK NEWS INFO. LLC and STEVEN KOIFMAN (collectively, the "Koifman Defendants") by and through undersigned counsel, hereby move this Court to dismiss this action against the Koifman Defendants, pursuant to Federal Rule of Civil Procedure 12(b)(1), Federal Rule of Civil Procedure 12(b)(6) and the Private Securities Litigation Reform Act of 1995 on the grounds that the complaint fails to state any claims upon which relief may or should be granted.

The grounds for this Motion are set forth below in the accompanying Memorandum of Law.

Respectfully Submitted,

**AKERMAN SENTERFITT LLP**

By:  /s/ William Nortman
William Nortman, Esq.
Florida Bar No.: 242039
Jonathan S. Robbins, Esq.
Florida Bar No.: 989428
Jeffrey T. Cook, Esq.

{FT804883;1}

Florida Bar No.: 647578
Akerman Senterfitt, PA
350 E. Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301
954-463-2700 (T)
954-463-2224 (F)

*Attorneys for Defendants Stock News Info.
LLC, and Steven Koifman*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 30, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically.

/s/  William Nortman
William Nortman

## SERVICE LIST

Stock Fraud Prevention, Inc. v. Stock News Info. LLC
Case No.:  9:11-cv-80764-KAM

| | |
|---|---|
| **Carlos E. Duque, Esq.**<br>103 Concord Avenue, Suite 2-2<br>Sommerville, MA  02143<br>tel:  317-270-3353<br>eduque4@gmail.com<br>*Attorney for Plaintiff* | **William Nortman, Esq.**<br>AKERMAN SENTERFITT<br>Las Olas Centre II, Suite 1600<br>350 East Las Olas Boulevard<br>Fort Lauderdale, Florida 33301-2229<br>Telephone: (954) 463-2700<br>Facsimile: (954) 463-2224<br>*Attorneys for Defendants Stock News Info. LLC and Steven Koifman* |
| **Jeffrey Carl Weinstein, Esq.**<br>Mittenthal Weinstein LLP<br>5499 N Federal Hwy., Suite K<br>Boca Raton, FL  33487<br>tel:  561-862-0955<br>fax:  561-862-0782<br>weinstein@mw-attorneys.com<br>*Attorneys for Plaintiff* | **Jonathan S. Robbins, Esq.**<br>AKERMAN SENTERFITT<br>Las Olas Centre II, Suite 1600<br>350 East Las Olas Boulevard<br>Fort Lauderdale, Florida 33301-2229<br>Telephone: (954) 463-2700<br>Facsimile: (954) 463-2224<br>*Attorneys for Defendants Stock News Info. LLC and Steven Koifman* |
| | **Jeffrey T. Cook, Esq.**<br>AKERMAN SENTERFITT<br>One Southeast Third Avenue, 25th Floor<br>Miami, FL 33131<br>Telephone: (305) 374-5600<br>Facsimile: (305) 374-5095<br>*Attorneys for Defendants Stock News Info. LLC and Steven Koifman* |

AKERMAN SENTERFITT, 350 EAST LAS OLAS BOULEVARD, SUITE 1600, FORT LAUDERDALE, FL  33301-2229

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

STOCK FRAUD PREVENTION, INC.                    CASE NO.:  9:11-cv-80764-KAM

     Plaintiff,

v.

STOCK NEWS INFO. LLC, SKYLINE
INVESTMENTS, INC., STEVEN KOIFMAN
and SCOTT WILDING

     Defendant.

_____/


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS STOCK NEWS INFO. LLC AND STEVEN KOIFMAN'S MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE

William Nortman, Esq.
Florida Bar No.: 242039
Jonathan S. Robbins, Esq.
Florida Bar No.: 989428
Jeffrey T. Cook, Esq.
Florida Bar No.: 647578
Akerman Senterfitt, PA
350 E. Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301
954-463-2700 (T)
954-463-2224 (F)

{FT805352;1}

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................- 1 -

STATEMENT OF FACTS ...................................................................................................- 2 -

ARGUMENT ........................................................................................................................- 4 -

I.      PLAINTIFF HAS NOT ESTABLISHED STANDING TO ASSERT ANY CLAIM ........- 4 -

II.     EACH CLAIM SHOULD BE DISMISSED AS A MATTER OF LAW......................- 6 -

    A. Count I Fails to State a Claim for Federal Securities Fraud ...........................................- 7 -
       1. Federal Securities Fraud Claims Are Not Assignable ...............................................- 7 -
       2. Plaintiff Fails All Applicable Pleading Requirements................................................- 8 -

    B. Count II Fails to State a Claim for Breach of Contract...................................................- 12 -
       1. The Parol Evidence Rule Bars the Alleged Breaches................................................- 12 -
       2. Plaintiff Has No Claim Against Non-Party Koifman ...............................................- 14 -
       3. The Third-Party Plaintiffs Are Not Intended Third-Party Beneficiaries .................- 15 -

    C. Count III Fails to State a Claim for Unjust Enrichment .................................................- 15 -

    D. Count IV Fails to State a Claim for Money Had and Received ......................................- 16 -

    E. Count V Fails to State a Claim for Breach of Fiduciary Duty .......................................- 16 -
       1. Plaintiff's Claim for Breach of Fiduciary Duty Is Not Assignable ..........................- 17 -
       2. Plaintiff Fails to Allege a Fiduciary Duty.................................................................- 17 -

    F. Count VI Should Be Dismissed – Punitive Damages....................................................- 18 -

CONCLUSION.....................................................................................................................- 19 -

### Cases

*Allegiance Healthcare Corp. v. Coleman,*
    232 F. Supp. 2d 1329, 1331 (S.D. Fla. 2002) ...........................................................- 6 -

*Allett v. Hill,*
    422 So. 2d 1047, 1050 (Fla. 4th DCA 1982) .............................................................- 12 -

*American Surety Co. of New York v. Smith,*
    130 So. 440, 441 (Fla. 1930) .....................................................................................- 15 -

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009)................................................................................................- 6 -

*Bankest Imports, Inc. v. ISCA Corp.,*
    717 F. Supp. 1537 (S.D. Fla. 1989) ..........................................................................- 17 -

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544, 555 (2007)...........................................................................................- 6 -

*Berry v. Budget Rent A Car Sys., Inc.,*
    497 F. Supp. 2d 1361 (S.D. Fla. 2007) .....................................................................- 16 -

*Blue Chip Stamps v. Manor Drug Stores,*
    421 U.S. 723, 730 (1975)...........................................................................- 7 -, - 8 -

*Bonner v. City of Prichard,*
    661 F.2d 1206, 1209 (11th Cir. 1981) .................................................................... - 19 -

*Bozeman v. Hernando County,*
    548 So. 2d 300 (Fla. 5th DCA 1989) ....................................................................... - 15 -

*Brigham v. Brigham,*
    11 So. 3d 374 (Fla. 3rd DCA 2009) ......................................................................... - 17 -

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.,*
    116 F.3d 1364 (11th Cir. 1997) .................................................... - 7 -, - 8 -, - 9 -

*Crenshaw v. Lister,*
    556 F.3d 1283, 1292 (11th Cir. 2009) ....................................................................... - 6 -

*Cripe v. Atlantic First National Bank,*
    422 So. 2d 820 (Fla. 1982) ...................................................................................... - 18 -

*Diamond "S" Dev. Corp. v. Mercantile Bank,*
    989 So. 2d 696 (Fla. 1st DCA 2008) ........................................................................ - 16 -

*Dobyns v. Trauter,*
    552 F. Supp. 2d 1150 (W.D. Wash. 2008) ....................................................... - 7 -, - 8 -

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336, 345 (2005) .......................................................................................... - 11 -

*Elend v. Basham,*
    471 F.3d 1199 (11th Cir. 2006) .............................................................................. - 5 -

*Equilease Corp. v. Hentz,*
    634 F.2d 850 (5th Cir. 1981) .................................................................................... - 16 -

*First Am. Bank & Trust Levitt v. Frogel,*
    726 F. Supp. 1292 (S.D. Fla. 1989) ........................................................................... - 9 -

*Forgione v. Dennis Pirtle Agency, Inc.,*
    701 So. 2d 557 (Fla. 1997) ...................................................................................... - 17 -

*Garfield v. NDC Health Corp.,*
    466 F.3d 1255 (11th Cir. 2006) .................................................................... - 7 -, - 8 -

*Goodman ex rel. Goodman v. Sipos,*
    259 F.3d 1327 n. 6 (11th Cir. 2001) .......................................................................... - 5 -

*Griffin Indus., Inc. v. Irvin,*
    496 F.3d 1189, 1206 (11th Cir. 2007) ....................................................................... - 6 -

*Gulf Atlantic Towing Corp. v. Dickerson, Inc.,*
    271 F.2d 542, 546 (5th Cir. 1959) ........................................................................... - 13 -

*Hall v. Humana Hosp. Daytona Beach,*
    686 So. 2d 653 (Fla. 5th DCA 1996) ....................................................................... - 16 -

*Harris v. United Auto. Ins. Group, Inc.,*
    579 F.3d 1227, 1230 (11th Cir. 2009) ........................................................ - 6 -, - 18 -

*Hubbard v. BankAtlantic Bancorp, Inc.,*
    2008 WL 5250271 at *8 (S.D. Fla. Dec. 12, 2008) ................................................... - 7 -

*In re Estate of Barry,*
    689 So. 2d 1186 (Fla. 4th DCA 1997) ................................................................... - 14 -

*In re Estate of Donner,*
    364 So. 2d 742 (Fla. 3d DCA 1978) ................................................................- 15 -

*In re Smith Gardner Sec. Litig.,*
    214 F. Supp. 2d 1291 (S.D. Fla. 2002) ...........................................................- 8 -

*In re TECO Energy, Inc. Sec. Litig.,*
    2006 WL 845161, *4 (M.D. Fla. Mar. 30, 2006) ...........................................- 11 -

*Janus Capital Gp. v. First Derivative Traders,*
    131 S.Ct. 2296 (2011)...........................................................................- 7 -, - 9 -

*Johnson Enters. of Jacksonville v. FPL Group, Inc.,*
    162 F.3d 1290 (11th Cir. 1998) ......................................................................- 12 -

*Knabb v. Reconstruction Finance Corp.,*
    197 So. 707 (Fla. 1940) ..................................................................................- 14 -

*KPMG Peat Marwick v. National Union Fire Ins. Co.,*
    765 So. 2d 36 (Fla. 2000) ...............................................................................- 17 -

*Lawrence v. Dunbar,*
    919 F.2d 1525 (11th Cir. 1990) .............................................................- 4 -, - 5 -

*Linear Corp. v. Standard Hardware Co.,*
    423 So. 2d 966 (Fla. 1st DCA 1982) ...........................................................- 14 -

*Marriott Corp. v. Dasta Const. Co.,*
    26 F.3d 1057 (11th Cir. 1994) ........................................................................- 13 -

*Matthews v. Drew Chem. Corp.,*
    475 F.2d 146 (5th Cir. 1973) ..........................................................................- 14 -

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,*
    547 U.S. 71, 81 (2006)......................................................................................- 7 -

*Midrash Sephardi, Inc. v. Town of Surfside,*
    366 F.3d 1214 (11th Cir. 2004) ........................................................................- 4 -

*Mizzaro v. Home Depot, Inc.,*
    544 F.3d 1230, 1237-1238 (11th Cir. 2008) .............................................- 8 -, - 10 -

*Payne v. Humana Hosp. Orange Park,*
    661 So. 2d 1239 (Fla. 1st DCA 1995) ..........................................................- 16 -

*Rudolph v. Arthur Andersen & Co.,*
    800 F.2d 1040 (11th Cir. 1986) ........................................................................- 9 -

*S.E.C. v. Kramer,*
    2011 WL 1230808 (M.D. Fla. Apr. 1, 2011)..................................................- 18 -

*Sharp v. Cuba Beverage Co.,*
    Case No. 37-2011-00090093-CU-FR-CTL (Cal. Super. Ct. Apr. 22, 2011).............- 12 -, - 16 -

*Simmons v. Peavy-Welsh Lumber Co.,*
    113 F.2d 812, 813 (5th Cir. 1940) ...................................................................- 6 -

*Smith Eng'g & Constr. Co. v. U.S. Fid. & Guar. Co.,*
    199 So. 2d 302, 305 (Fla. 1st DCA 1967) ....................................................- 12 -

*Steel Co. v. Citizens for a Better Environment,*
    523 U.S. 83 (1998).............................................................................................- 4 -

*Syverson v. Jones,*
  10 So. 3d 1123 (Fla. 1st DCA 2009) ................................................................. - 13 -

*Taylor v. Appleton,*
  30 F.3d 1365, 1368 n.3 (11th Cir. 1994) .......................................................... - 6 -

*Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.,*
  850 So. 2d 536 (Fla. 5th DCA 2003) ................................................................ - 18 -

*Teacher's Ret. Sys. of La. v. Hunter,*
  477 F.3d 162 (4th Cir. 2007) ............................................................................ - 11 -

*Tellabs Inc. v. Makor Issues & Rights, Ltd.,*
  127 S. Ct. 2499 (2007) ...................................................................................... - 10 -

*Universal Express, Inc. v. S.E.C.,*
  177 Fed. App'x 52 (11th Cir. 2006) .................................................................. - 12 -

*Wheeler v. Wheeler, Erwin & Fountain, P.A.,*
  964 So. 2d 745, 749 (Fla. 1st DCA 2007) ......................................................... - 13 -

*Williams v. McFerrin,*
  242 F.2d 53, 55 (5th Cir. 1957) ........................................................................ - 19 -

*Ziemba v. Cascade Int'l Inc.,*
  256 F.3d 1194 (11th Cir. 2001) ............................................................. - 8 -, - 9 -

**Statutes**

15 U.S.C. § 78u-4(b)(1) ....................................................................................... - 8 -

15 U.S.C. § 78u-4(b)(2) ..................................................................................... - 10 -

15 U.S.C. § 78u-4(b)(3)(A) .................................................................................. - 8 -

15 U.S.C. §78u-4(b)(4) ...................................................................................... - 11 -

Fla. Stat. § 768.72 .............................................................................................. - 18 -

**Rules**

Fed. R. Civ. P. 9(b) .............................................................................................. - 7 -

Fed. R. Civ. P. 10(c) ............................................................................................ - 6 -

Fed. R. Civ. P. 12(b)(1) ............................................................................ - 1 -, - 4 -

Fed. R. Civ. P. 12(b)(6) ............................................................................ - 1 -, - 6 -

Fed. R. Civ. P. 8 .................................................................................................. - 7 -

Fed. R. Civ. P. Rule 9(b) ................................................................................... - 11 -

Rule 10b-5 ................................................................................................ - 7 -, - 8 -

Rule 9(b) .............................................................................................................. - 8 -

iv

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.:  11-cv-80764-MARRA

STOCK FRAUD PREVENTION, INC.

      Plaintiff,

v.

STOCK NEWS INFO. LLC, SKYLINE
INVESTMENTS, INC., STEVEN KOIFMAN
and SCOTT WILDING

      Defendant.

_____/

## DEFENDANTS STOCK NEWS INFO. LLC AND STEVEN KOIFMAN'S MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE

Defendants, STOCK NEWS INFO. LLC ("Stock News") and STEVEN KOIFMAN ("Koifman") (together, the "Koifman Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(1), Federal Rule of Civil Procedure 12(b)(6) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), respectfully move the Court to dismiss this action against the Koifman Defendants.

## INTRODUCTION

The Complaint alleges "one overarching fraudulent scheme" involving the sale of securities of Cuba Beverage Company ("CUBV") to Defendants.  Complaint ¶ 12.  Despite the applicability of a slew of heightened pleading requirements, mystery surrounds this alleged fraud.  The Complaint is replete with conclusory factual allegations peppered with unsupported allegations that are predicated upon "information and belief" without ever stating what the basis of that information or belief may be.

Plaintiff's claims are plagued by an array of other legal deficiencies:

- Plaintiff asserts a claim for federal securities fraud without sufficiently alleging any alleged misrepresentation, scienter, or loss causation;

- In contravention of the parol evidence rule, Plaintiff asserts a breach of contract claim based on alleged promises made at the time of – and inconsistent with – written stock purchase agreements that are attached to the Complaint[1];

- Plaintiff asserts a breach of fiduciary duty claim without alleging the prerequisite fiduciary relationship in this arms-length securities transaction;

- Plaintiff asserts duplicative claims for unjust enrichment and money had and received without any alleged enrichment or receipt of money by the Koifman Defendants; and

- Plaintiff improperly asserts a "cause of action" for punitive damages without any cognizable underlying claim of intentional wrongdoing.

Even Plaintiff is a complete stranger to this alleged fraud, and its standing to bring this lawsuit is dubious at best. Notably, Plaintiff has no personal claims of its own. Rather, Plaintiff purports to be the assignee of claims from a variety of former and current CUBV shareholders without any evidence of any such assignments.[2] Moreover, the public records reveal that the corporate assignees were not even in legal existence at the time of the purported assignments. Compounding the error, Plaintiff asserts multiple claims that are non-assignable as a matter of law.

For these reasons as detailed below, the Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS

Plaintiff alleges to be a Wyoming corporation that was established for the sole purpose of asserting claims allegedly assigned to Plaintiff by both "Selling Plaintiffs" and "Third Party Plaintiffs." Compl. ¶¶ 1, 9. The Selling Plaintiffs are Cylogic Aerospace ("Cylogic"), a purported Nevada corporation, and Crown Marketing ("Crown"), a purported South Dakota corporation. *Id.* ¶ 7. The Third Party Plaintiffs were all CUBV shareholders at the time of and after the transaction in question. *Id.* ¶ 8. Plaintiff provides no evidence or details of any assignment from either Selling Plaintiffs or Third Party Plaintiffs.

---

[1] Paragraph 17 of the Complaint makes reference to Exhibits A-H, which purport to be the notes and share purchase agreements. However, Exhibits A-H contain a number of documents, including a legal opinion pertaining to another stock transaction, having nothing to do with the subject matter of this Complaint and apparently added to obscure the vacuous nature of the claims contained in this Complaint.

[2] Paragraph 9 of the Complaint alleges that "Plaintiff was incorporated exclusively for the purposes of asserting Cylogic's and Crown's and the third party beneficiaries' rights against the Defendants. These rights have been duly assigned to Plaintiff . . . ." The Complaint provides no evidence or details with respect to these purported assignments.

The Complaint centers around the sale of CUBV shares by Crown and Cylogic to Defendants in January 2011 (the "Shares").  *Id.* ¶ 17.  Crown and Cylogic had acquired the Shares just six months earlier as part of a conversion of $280,000 in promissory notes into 17,976,000 shares of CUBV common stock.  *Id.* Exh. H.  In other words, **Crown and Cylogic acquired the Shares for $0.0155763 per share**.

> The Complaint expressly alleges:
> Crown and Cylogic agreed to sell, and Defendants agreed to purchase, the Shares in consideration of the Notes with an agreed face value of $50,000 and the balance to be paid via Defendants' provision of services equal in value to $1,060,000, for a total value of $0.37 per share or $1,100,000.  A copy of the Notes and the share purchase agreements are attached as Exhibits A-H to this Complaint.

*Id.* ¶ 17.

Exhibit F and H to the Complaint contain Stock Purchase Agreements dated January 27, 2011, between Stock News and Crown and Stock News and Cylogic, respectively (the "Agreements").  *Id.*  Exhs. F, H.  The Agreements contradict Plaintiff's allegations with respect to the consideration for the sale of the Shares.  Specifically, the Agreements expressly provide that "Seller hereby agrees to sell the Contract Shares to Buyer at a purchase price per share which shall be $.0166667 per share, for a total of $8,333.33."  *Id.*[3]  Per the express terms of the Agreements, the only delivery required to close was "a signed promissory note for $8,333.33 which will be due in 60 days.  **This represents the purchase price for the Contract Shares**."  *Id.* (emphasis added).  The parties expressly acknowledged in the Agreements that each had been represented by counsel.  *See id.*

Plaintiff alleges that Defendants elsewhere promised to conduct a marketing campaign (that could be paid for with sales of Shares), to find buyers for the shares held by the Third Party Plaintiffs, and not to take action "likely to have a significant adverse effect on the trading price of Company shares."  *Id.* ¶¶ 14-15.  Notably, all of these promises were made "**at the time of**" the sale of the Shares pursuant to the Agreements.  *Id.* ¶¶ 18, 21, 23, 29, 30, 32, 38, 54 (emphasis added).

_____

[3] This sale price represented a 7% increase over Cylogic and Crown's acquisition price of the Shares just six months earlier.  *Compare id. with id.* Exh. H.

However, none of these promises appears – either explicitly or implicitly – in the Agreements. *Id.* Exhs. F, H.

The Complaint alleges that "the investment contracts at the center of this suit were entered into by Cylogic and Crown with the express purpose of benefitting each of the [Third Party Plaintiffs]." *Id.* ¶ 10. However, the Agreements make no reference – either explicitly or implicitly – to the Third Party Plaintiffs or their interests. *Id.* Exhs. F, H.

The Complaint alleges heavy trading activity after the execution of the Agreements, and that Defendant Wilding was "primarily responsible" for the selloff. *Id.* ¶¶ 24-25. Whereas the Koifman Defendants collectively purchased 1,000,000 shares, the Complaint alleges multiple days in which trading volumes exceeded that number of shares – and one day in which 5,000,000 shares were traded. *See id.* ¶ 23. The Complaint contains no allegation that the Koifman Defendants ever sold any of the Shares.

## ARGUMENT

The Complaint should be dismissed for a number of reasons. First, Plaintiff has not established its standing to sue. Second, each claim is fraught with a number of legal deficiencies.

## I.   PLAINTIFF HAS NOT ESTABLISHED STANDING TO ASSERT ANY CLAIM

In order to exercise subject matter jurisdiction over a case, the Court must determine initially whether Plaintiff has standing to bring its claims. *See Fed. R. Civ. P. 12(b)(1); Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1223 (11th Cir. 2004). "The party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83 (1998)). Plaintiff has no personal claim of its own. Rather, all claims in the Complaint are by purported assignment. However, there is no indication – beyond pure conclusory allegations – that any claim has been actually and validly assigned to Plaintiff.

The Koifman Defendants hereby challenge the existence of subject matter jurisdiction in fact. As such, "no presumptive truthfulness attaches to plaintiff's allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). *See also Goodman ex rel. Goodman v.*

*Sipos*, 259 F.3d 1327, 1332 n. 6 (11th Cir. 2001) (factual attack on standing presents a question of law, and "facts outside of the pleadings may be considered as part of that determination."). Thus, even at the pleading stage, the court must examine the record as a whole to determine whether there is subject matter jurisdiction and accept the undisputed facts in the record as true. *See Elend v. Basham*, 471 F.3d 1199, 1208 (11th Cir. 2006), *Lawrence*, 919 F.2d at 1528-29.

Plaintiff has the burden to establish standing, and has failed to do so. Bald allegations of assignment are insufficient. *See Lawrence*, 919 F.2d at 1529. Other allegations as to the relations and existence of the purported assignors cast substantial doubt on Plaintiff's standing. For example, Plaintiff alleges that the purported assignors, Cylogic and Crown Marketing, are Nevada and South Dakota corporations, respectively. *See* Compl. ¶ 7. However, according to the records of the Secretary of State for Nevada, Cylogic's corporate charter was revoked on May 26, 2006. (attached hereto as Exhibit A). Moreover, no record of Crown Marketing as a South Dakota corporation was located; however, there was located a record for a Crown Marketing, LLC, a limited liability company with a reported "inactive" status (attached hereto as Exhibit B).

Further confusion abounds from the fact that part of Exhibit H to the Complaint is a letter dated August 17, 2010 from Attorney Jonathan M. Shiff to Standard Registrar & Transfer Co. Inc. The letter lists both purported assignors at the same address in Panama City, Panama and states for both "No Tax ID (Non-U.S.)." Compl. Exh. H. Moreover, the shares for Cylogic and Crown Marketing were "[t]o be issued in the name of Arakis Financial, Inc." *Id.* Given that the Plaintiff was "incorporated exclusively for the purpose of asserting Cylogic's and Crown's . . . rights against Defendants," there are serious threshold questions as to the juridical existence of the purported assignors.

Accordingly, Plaintiff has failed to allege – and must present sufficient undisputed evidence – that it has standing pursuant to actual and valid assignments.[4]

---

[4] In light of the specious nature of Plaintiff's standing and instigation of this lawsuit, the Koifman Defendants specifically preserve any and all forms of affirmative relief available to them against Plaintiff, including but not limited to their own Rule 10b-5 claims for the purchase of the Shares from Selling Plaintiffs and claims related to champerty for Plaintiff's improper maintenance of this lawsuit.

## II.     EACH CLAIM SHOULD BE DISMISSED AS A MATTER OF LAW

Even if Plaintiff has proper standing, it fails to state any claim as a matter of law.  When ruling on a motion to dismiss for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), the court takes the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff.  *See Harris v. United Auto. Ins. Gr., Inc.*, 579 F.3d 1227, 1230 (11th Cir. 2009).  The complaint must "state a claim to relief that is plausible on its face," "more than a sheer possibility," and "above the speculative level." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, the complaint must contain sufficient factual matter, accepted as true, to permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

It is well-established that the Court may properly consider any exhibits attached to the complaint in determining whether to grant a Rule 12(b)(6) motion to dismiss.  *See, e.g., Taylor v. Appleton*, 30 F.3d 1365, 1368 n.3 (11th Cir. 1994) (finding that exhibit attached to complaint was part of the pleadings and properly relied on in ruling on a motion to dismiss); *Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1331 (S.D. Fla. 2002) ("Where, as here, a plaintiff attaches documents as exhibits to the complaint, the court may consider the contents of the exhibits even though they go beyond the specific allegations of the complaint"); Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

In fact, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).  *See also Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)[5] ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").  Accordingly, any conflict between allegations in the complaint and the exhibits attached thereto must be resolved in favor of the exhibit.  *See Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) ("Because the officers' police reports attached to the complaint refute [the plaintiff's]

---

[5] *Simmons v. Peavy-Welsh Lumber Co.* is binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)

conclusory and speculative allegation about what the officers saw, we do not credit [the plaintiff's] allegation.").

## A.   <u>Count I Fails to State a Claim for Federal Securities Fraud</u>

In order to state a claim for securities fraud under Section 10(b)/Rule 10b-5, a plaintiff must allege (1) a misstatement or omission, (2) of a material fact, (3) with scienter by the person or entity with ultimate authority over the statement, (4) upon which the plaintiff relied, (5) that proximately caused the plaintiff's injury. *See Janus Capital Gp. v. First Derivative Traders*, 131 S.Ct. 2296, 2303 (2011); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997). The PSLRA imposes a unique and rigorous set of pleading standards — well beyond that of Federal Rules of Civil Procedure 8 and 9(b) — applicable only to private securities claims. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81 (2006). The Complaint fails to satisfy any – much less all – of these pleading requirements.[6] Moreover, this claim is subject to dismissal because it is non-assignable.

### 1.   **Federal Securities Fraud Claims Are Not Assignable**

Plaintiff does not assert a securities fraud claim of its own. In other words, Plaintiff itself does not allege to have relied on or received any alleged misrepresentation, and otherwise had no relationship with Defendants. These are all required elements of the securities fraud claim alleged in the Complaint.

Given this highly personal nature, it is well-established that this claim is not assignable. *See, e.g., Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730 (1975) (limiting "the plaintiff class for purposes of a private damage action under § 10(b) and Rule 10b-5 to actual purchasers and sellers of securities"); *Dobyns v. Trauter*, 552 F. Supp. 2d 1150, 1156 (W.D. Wash. 2008) (noting that Rule 10b-5 claims have been assignable in only two cases with "very unique factual

---

[6] Plaintiff seeks to impose secondary "control person" liability on Koifman under Section 20(a) of the Exchange Act. Because Plaintiff fails to adequately plead a primary violation under Section 10(b) of the Exchange Act, its Section 20(a) "control person" claims must also be dismissed. *See Hubbard v. BankAtlantic Bancorp, Inc.*, 2008 WL 5250271 at *8 (S.D. Fla. Dec. 12, 2008) ("Because the Court finds that Plaintiff has not adequately plead scienter under the PSLRA, Plaintiff has in turn failed to state a claim against the Individual Defendants under Section[] 20(a). . ."; *Garfield v. NDC Health Corp.*, 466 F.3d 1255 (11th Cir. 2006).

situations"). This is especially true given the evidentiary problems if non-sellers, such as Plaintiffs, were allowed to bring a Rule 10b-5 claim. *See Blue Chip Stamps*, 421 U.S. at 740-43; *Dobyns*, 552 F. Supp. 2d at 1156 (finding Rule 10b-5 claim non-assignable where seller's "alleged reliance and purported lack of knowledge regarding the alleged nondisclosures will be critical issues on summary judgment but their available discovery tools will be limited by [seller]'s non-party status"). The facts of this case especially exacerbate this concern, with the Selling Plaintiffs and Third Party Plaintiffs apparently scattered around the world – from Wyoming and Nevada to Antigua, Colombia, Ukraine, Panama, and Belarus. *See* Compl. Exh. H.

Accordingly, Plaintiff has no basis to assert Count I.

## 2. Plaintiff Fails All Applicable Pleading Requirements

Count I also fails to satisfy a variety of pleading requirements. The Private Securities Litigation Reform Act ("PSLRA") imposes pleading requirements in addition to those set forth in Federal Rules of Civil Procedure 8 and 9(b), and provides that if these requirements are not met, "the court shall, on the motion of any defendant, dismiss the complaint." 15 U.S.C. § 78u-4(b)(3)(A) (emphasis added).

### a. No "Who, What, When, Where, Why" of the Fraud

The first PSLRA requirement applicable to "any private action" under Section 10(b) is to "specify each statement [alleged] to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1) (emphasis added); *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237-1238 (11th Cir. 2008). In other words, a complaint alleging securities fraud must allege with particularity the "who, what, why, where, and when" of the alleged fraud. *See Garfield v. NDC Health Corp*, 466 F.3d 1255, 1262 (11th Cir. 2006); *In re Smith Gardner Sec. Litig.*, 214 F. Supp. 2d 1291 (S.D. Fla. 2002). *See also Ziemba v. Cascade Int'l Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks*, 116 F.3d at 1371) ("Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and

(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'").

Further, "where multiple defendants are alleged to be involved in a fraud, [Rule] 9(b) requires that the Complaint allege the actual involvement and role of each defendant in the fraud." *First Am. Bank & Trust Levitt v. Frogel*, 726 F. Supp. 1292, 1295 (S.D. Fla. 1989). *See also Leisure Founders v. CUC Int'l*, 833 F. Supp. 1562, 1575 (S.D. Fla. 1993). A plaintiff cannot merely "lump together all of the Defendants" so as to fail to "inform each defendant of the nature of his alleged participation in the fraud." *Brooks*, 116 F.3d at 1371 (internal quotation marks omitted). Indeed, the United States Supreme Court recently affirmed that only the actual "maker" of a statement can be liable for securities fraud. *Janus Capital Gr.*, 131 S.Ct. at 2302("For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it.").

Here, there is no detail of the time, place, or exact manner of any of the alleged representations or of the alleged sales of Shares by Defendants.[7] Moreover, Plaintiff makes a number of allegations "upon information and belief," but provides no factual basis for the belief that any of the alleged misrepresentations were false or misleading. *E.g.*, Compl. ¶¶ 24, 29, 30, 34.

The Complaint is also "devoid of specific allegations with respect to the separate Defendants." *Brooks*, 116 F.3d at 1371. There is no indication in the Complaint as to which Defendant "made" any of the alleged misrepresentations or omissions. Rather, all Defendants are clumped together throughout the Complaint without indication of individual wrongdoing.

Finally, the Complaint is devoid of any allegations of "what the defendants obtained as a consequence of the fraud." *Ziemba*, 256 F.3d at 1202. Indeed, there is no allegation that the Koifman Defendants sold any of the Shares. *See* Compl. ¶¶ 24-25.

---

[7] Similarly, the Complaint provides no detail with respect to the alleged omissions or misleading representations. *See Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1043 (11th Cir. 1986) ("A duty to disclose may also be created by a defendant's previous decision to speak voluntarily. Where a defendant's failure to speak would render the defendant's own prior speech misleading or deceptive, a duty to disclose arises.").

For all of these reasons, Count I should be dismissed against the Koifman Defendants.

b.   <u>No Scienter</u>

The second PSLRA requirement is to "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind" — in this case, at least "severe recklessness." 15 U.S.C. § 78u-4(b)(2) (emphasis added); *Mizzaro*, 544 F.3d at 1238. To qualify as a "strong inference of scienter" under the PSLRA, an inference of scienter "must be more than merely plausible or reasonable." *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2504-05 (2007). A complaint only can survive if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged." *Id.* at 2502-03; *Mizzaro*, 544 F.3d at 1238-1239. Accordingly, opposing inferences should be considered on a motion to dismiss, and omissions and ambiguities in a plaintiff's complaint should "count against inferring scienter." *Tellabs*, 127 S. Ct. at 2503.

Here, there is nothing but conclusory allegations that the Koifman Defendants acted with the requisite scienter. Compl. ¶¶ 29-30. Indeed, there is no allegation that the Koifman Defendants ever sold any of the Shares, *id.* ¶¶ 24-25, or any specific allegations that the Koifman Defendants individually took any actions at all (other than signing the Agreements and attendant promissory notes).

In addition, there are opposing inferences to be drawn from the Complaint. Even if the Koifman Defendants were alleged to have sold any Shares, the Complaint itself alleges that sales were specifically allowed to fund the marketing campaign to be undertaken. *Id.* ¶ 18. There are allegations that such marketing campaign in fact was undertaken. *Id.* ¶ 25. Therefore, the more reasonable inference is that the Koifman Defendants lived up to the alleged representations, and therefore did not act with the requisite scienter.

c.   <u>No Loss Causation</u>

The Complaint must also be dismissed because it fails to plead loss causation – that is, "a causal connection between the [material] misrepresentation and the economic loss." *Dura Pharms.,*

*Inc. v. Broudo*, 544 U.S. 336, 345 (2005). *See also* 15 U.S.C. §78u-4(b)(4).[8]  As the Supreme Court has declared, private securities fraud actions are not intended "to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura*, 544 U.S. at 345.  As such, the allegation that the losses somehow resulted from misrepresentations or omissions on the part of Defendants — rather than more plausible explanations — must fail.  *See In re TECO Energy, Inc. Sec. Litig.*, No. 8:04-CV-1948-T-27EAJ, 2006 WL 845161, *4 (M.D. Fla. Mar. 30, 2006).

The Complaint alleges a drop in value of the Shares based on the allegation that "Defendants" sold an inordinate number of shares.  *See* Compl. ¶¶ 24-25.  This theory fails to plead loss causation with respect to the Koifman Defendants in many respects.  First, there is no allegation that the Koifman Defendants sold any Shares – rather, defendant "Wilding was primarily responsible for the selloff."  *Id.*. ¶¶ 24-25.  Second, the Koifman Defendants collectively held a small fraction of the outstanding stock of CUBV.  According to the Complaint, there were a minimum of 39,976,000 shares of CUBV common stock outstanding.  *See* Compl., Exhibit H at p.1.  The Koifman Defendants, on the other hand, collectively acquired at most 2.5% of those shares.  Third, the Complaint expressly alleges daily trading volumes of up to 5,000,000 shares in one day, and in excess of 1,000,000 and 2,000,000 shares in others.  *See id.* ¶ 23.  These volumes far exceed the total number of shares owned by the Koifman Defendants (1,000,000), and demonstrate that the Koifman Defendants at most could have accounted for a mere fraction of the shares sold on any particular day.  *See, e.g., id.* ¶ 25 (alleging the sale of "millions of shares . . . by persons other than Third Party Plaintiffs").

Finally, it is clear that CUBV was hit with a flurry of bad news around the time of the alleged selloff in Shares.  For example, on April 22, 2011, a shareholder complaint was filed against CUBV, its chief executive and a stock promoter alleging fraud and other wrongdoing by them (*i.e.* not Defendants) that caused the sharp decline in the stock price over the same period of time.  *See*

---

[8]  Loss causation must also be pled under the heightened pleading standard of Fed. R. Civ. P. Rule 9(b). *See Teacher's Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 186 (4th Cir. 2007).

*Sharp v. Cuba Beverage Co.*, Case No. 37-2011-00090093-CU-FR-CTL, 2011 WL ___ (Cal. Super. Ct. Apr. 22, 2011), attached hereto at Exhibit C.[9]  Given all of these alternative forces, Plaintiff has failed to plead loss causation with respect to the Koifman Defendants.

Having failed to satisfy any – much less all – of the applicable pleading requirements, Count I must be dismissed.

### B.   Count II Fails to State a Claim for Breach of Contract

Count II is for breach of "promises made by Defendants at the time they purchased the Shares from Selling Plaintiffs."  Compl. ¶ 54.  These alleged promises included conducting a marketing campaign on CUBV, finding buyers for Third Party Plaintiffs' shares, and refraining from selling their own Shares in the meantime. *Id.* ¶¶ 49-50.  Defendants purchased the Shares from the Selling Plaintiffs pursuant to the written Agreements. *Id.* Exhs., F, H.  The alleged promises were made contemporaneously with – but are nowhere mentioned in – the Agreements, and are thus nullified under the parol evidence rule.  Moreover, Plaintiff asserts this claim against a non-party to the contracts (Koifman) and on behalf of purported third-party beneficiaries that are nowhere mentioned in the Agreements.  For theses reasons, Count II must be dismissed.

### 1.   The Parol Evidence Rule Bars the Alleged Breaches.

Florida law recognizes the parol evidence rule, which provides that "evidence of a prior or contemporaneous oral agreement is inadmissible to vary or contradict the unambiguous language of a valid contract." *Johnson Enters. of Jacksonville v. FPL Group, Inc.*, 162 F.3d 1290, 1309 (11th Cir. 1998). *See also Allett v. Hill*, 422 So. 2d 1047, 1050 (Fla. 4th DCA 1982) (finding error in "the admission of parol evidence to add a term to [a] written lease . . . whether part of the preliminary negotiations or a separate subsequent condition"); *Smith Eng'g & Constr. Co. v. U.S. Fid. & Guar. Co.*, 199 So. 2d 302, 305 (Fla. 1st DCA 1967) ("[W]hen a legal act is reduced into a single writing, all other utterances of the parties on that topic are legally immaterial for the purpose of determining

---

[9]  A court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. *See Universal Express, Inc. v. S.E.C.*, 177 Fed. Appx. 52, 53 (11th Cir. 2006).

what are the terms of their act. . . . No other language is admissible to show what they meant or intended. . . ."). Contracts cannot be rewritten in hindsight, even if the terms appear to be improvident. *See Marriott Corp. v. Dasta Const. Co.*, 26 F.3d 1057 (11th Cir. 1994) ("Although these terms may seem one-sided, Dasta was aware of these provisions at the time it bid the contracts, and had the opportunity to increase its proposed contract prices to account for the risks it would be assuming. Dasta failed to seize upon this opportunity, and, in hindsight, made a pair of improvident bargains from which we are powerless to grant relief. It is not the function of the courts to rewrite a contract or interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship of an improvident bargain." (internal quotation marks omitted)).

For the parol evidence rule to apply, "the written agreement must appear on its face to express an agreement complete in all essential terms." *Gulf Atlantic Towing Corp. v. Dickerson, Inc.*, 271 F.2d 542, 546 (5th Cir. 1959). Here, the Agreements contain all essential terms: the number of Shares, the price paid for those Shares, and the form of payment. Nor is there any obvious or latent ambiguity in these essential terms. *See Wheeler v. Wheeler, Erwin & Fountain, P.A.*, 964 So. 2d 745, 749 (Fla. 1st DCA 2007) (evidence outside the contract language, which is known as parol evidence, may be considered only when the contract language contains a latent ambiguity). The Agreements state crystal-clearly that Stock News paid a certain amount for the Shares in the form of promissory notes: "Seller hereby agrees to sell the Contract Shares to Buyer at a purchase price per share which shall be $.0166667 per share, for a total of $8,333.33" in the form of "a signed promissory note for $8,333.33 which will be due in 60 days. **This represents the purchase price for the Contract Shares**." *Id.* (emphasis added). There is no patent or latent ambiguity that this is the sole consideration for the Shares. *See Syverson v. Jones*, 10 So. 3d 1123 (Fla. 1st DCA 2009) ("Because there is no latent ambiguity, parol evidence was not admissible, and the trial court erred in considering it as evidence of the parties' intent.").

Plaintiff alleges that the alleged oral promises were "key terms" on which they agreed to sell the Shares. Compl. ¶ 51. However, Florida law "reject[s] the applicability of law allowing parol

evidence to demonstrate the 'true consideration' for an agreement.   The 'true consideration' exception is only applicable to clarify an ambiguous document." *In re Estate of Barry*, 689 So. 2d 1186 (Fla. 4th DCA 1997).  As stated by the Florida Supreme Court:

> It is true that for some purposes parol evidence can be introduced to explain or amplify the consideration recited in a written contract; but this exception to the general rule does not permit proof of an oral agreement for the purpose of imposing an affirmative obligation on one of the parties of which there is no indication or suggestion in the written contract. If that were to be permitted on the theory of an inquiry into the consideration of the contract, the rule respecting the finality of written contracts would obviously be abrogated.

*Knabb v. Reconstruction Finance Corp.*, 197 So. 707, 716 (Fla. 1940).  Again, there is no ambiguity – latent or otherwise – in the Agreements with respect to consideration.

Nor can Plaintiff use parol evidence as evidence of inducement to enter into the Agreements. With respect to either partially or completely integrated contracts, parol evidence is only allowed if it "relate[s] to a subject distinct from that to which the written contract applies; that is, it must not be so closely connected with the principal transaction as to form part and parcel of it." *Matthews v. Drew Chem. Corp.*, 475 F.2d 146, 149-50 (5th Cir. 1973) (interpreting Florida law).  *See also Linear Corp. v. Standard Hardware Co.*, 423 So. 2d 966, 968 (Fla. 1st DCA 1982) (the inducement exception to the parol evidence rules does not apply where "the alleged oral agreement relate[s] to the identical subject matter embodied in the written agreement and . . . directly contradict[s] an express provision of the written agreement.").  Here, the collateral promises that are the sole basis of Plaintiff's claim not only contradict the consideration expressly recited in the Agreements (the promissory note "represents the purchase price for the Contract Shares"), but also are "closely connected with the principal transaction" as superfluous promises for the same exact consideration (sale of the Shares).[10]

Accordingly, the parol evidence rule bars consideration of the alleged promises that were allegedly breached.  Absent an actionable breach, Plaintiff has no claim for breach of contract.

### 2.    Plaintiff Has No Claim Against Non-Party Koifman

---

[10] In essence, Plaintiff is alleging an additional oral contract for the same – and only – consideration underlying the written Agreements.  Such additional contract would be invalid for lack of consideration.

Plaintiff also asserts a breach of contract claim against Koifman individually.  However, Koifman is not a party to the only potentially actionable contract, the Agreements and attendant promissory notes.  *See* Compl. Exhs. F, H.  For this additional reason, Count II should be dismissed with respect to Koifman.  *See In re Estate of Donner*, 364 So. 2d 742, 749 (Fla. 3d DCA 1978) (non-party to contract cannot be found liable for breach of that contract).

### 3.  The Third Party Plaintiffs Are Not Intended Third-Party Beneficiaries

Moreover, there is no claim for breach of contract with respect to the Third Party Plaintiffs. It is well-established that a third party may sue on a contract only if "it is manifest from the nature or terms of a contract that the formal parties thereto intended its provisions to be for the benefit of a third party." *American Surety Co. of New York v. Smith*, 130 So. 440, 441 (Fla. 1930).  *See also Bozeman v. Hernando County*, 548 So. 2d 300, 301 (Fla. 5th DCA 1989) (dismissing third-party-beneficiary claim "because the complaint, standing alone, indicates that [the patient] was at most an incidental third party beneficiary of the stated employment contract").  Here, the Third Party Plaintiffs are nowhere mentioned – either explicitly or implicitly – in the Agreements (the only potentially enforceable contract).  *See* Compl. Exhs. F, H.  Therefore, Count II should be dismissed with respect to the Third Party Plaintiffs.

### C.  Count III Fails to State a Claim for Unjust Enrichment

Plaintiff next claims that "Defendants" have been unjustly enriched "when they purchased Shares at a discount from Selling Plaintiffs, and garnered an additional benefit of $1,000,000, on information and belief, when Defendants sold those discounted shares into the market." Compl. ¶ 58.  Again, there is no allegation that the Koifman Defendants ever sold Shares, and any claim of unjust enrichment is negated by the express allegations that other defendants did sell Shares and were primarily responsible for the alleged selloff.  *See id.* ¶¶ 24-25.  Thus, the Complaint fails to allege (in non-conclusory terms) that the Koifman Defendants obtained <u>any</u> benefit, improper or otherwise.

Moreover, "a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Diamond "S" Dev. Corp. v. Mercantile*

*Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008).  *See also Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1370 (S.D. Fla. 2007) (dismissing unjust enrichment claim "if a contract is already in place that directly addresses the matter complained of").  As set forth *supra*, Selling Plaintiffs and Stock News entered into written unambiguous Agreements with respect to the sale of the Shares.  Accordingly, Plaintiff cannot state a related claim for unjust enrichment.

### D.       Count IV Fails to State a Claim for Money Had and Received

Plaintiff next asserts a claim for money had and received based on its allegation that Defendants "issued four promissory notes [that] were due and payable on March 4, 2011 and have not been paid." Compl. ¶ 62.  Even if true, this allegation does not state a claim for money had and received, which requires a "showing that the defendant has possession of money of the plaintiff which in equity and good conscience he ought to pay over." *Payne v. Humana Hosp. Orange Park*, 661 So. 2d 1239, 1240 (Fla. 1st DCA 1995) (quoting *Cullen v. Seaboard Air Line R.R. Co.,* 58 So. 182 (Fla. 1912)).  *See also Sharp v. Bowling*, 511 So. 2d 363, 364-65 (Fla. 5th DCA 1987) (money had and received is "a remedy at law to recover money erroneously paid or received by a defendant when to permit the defendant to keep the money would unjustly deprive the plaintiff of his ownership of the money.").  Stock News never received – and does not have possession of – any money of Plaintiff.

Moreover, "the presence of an express contract precludes recovery on a quasi-contractual remedy such as money had and received." *Berry*, 497 F. Supp. 2d at 1370.  For these reasons, Count IV must be dismissed.[11]

### E.       Count V Fails to State a Claim for Breach of Fiduciary Duty

Plaintiff next alleges that the Koifman Defendants "bore fiduciary duties" to Selling Plaintiffs because they "promised to sell 80% of the Shares for the benefit of Selling Plaintiffs." Compl. ¶ 64.  This claim is subject to dismissal for numerous reasons.

---

[11] In addition, unjust enrichment and money had and received are different names for the same cause of action. *See Equilease Corp. v. Hentz*, 634 F.2d 850, 853 (5th Cir. 1981); *Hall v. Humana Hosp. Daytona Beach*, 686 So. 2d 653, 656 (Fla. 5th DCA 1996) (suggesting that an action for "money had and received" is nothing more than the "modern action" for unjust enrichment).  Therefore, this claim should be dismissed as duplicative.

**1.    Plaintiff's Claim for Breach of Fiduciary Duty Is Not Assignable.**

As with the federal securities fraud claim, Plaintiff cannot be the assignee of a claim for breach of fiduciary duty.    Under Florida law, "personal tort" claims are not assignable.    *See Forgione v. Dennis Pirtle Agency, Inc.*, 701 So. 2d 557, 559 (Fla. 1997).    Torts involving "confidential" relationships are personal and thus not assignable. *See, e.g., KPMG Peat Marwick v. National Union Fire Ins. Co.*, 765 So. 2d 36, 38 (Fla. 2000) (noting that legal malpractice claims are not assignable "because of the personal nature of legal services which involve a confidential, fiduciary relationship of the very highest character, with an undivided duty of loyalty owed to the client"); *Forgione*, 701 So. 2d at 560 (noting that claim involving "fiduciary relation" and "duty of undivided loyalty" would be non-assignable).

As set forth next, a claim for breach of fiduciary duty necessarily entails a relationship in which trust and confidence is instilled from one party to another.    Therefore, such a claim is inherently personal and not assignable.

**2.    Plaintiff Fails to Allege a Fiduciary Duty**

In order for there to be a breach of a fiduciary duty, there must first be a fiduciary relationship.   "To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Brigham v. Brigham*, 11 So. 3d 374, 387 (Fla. 3rd DCA 2009) (quotation marks and citations omitted).   There are two distinct requirements, one as to each party to the relationship: "the fact that one party places its trust in the other does not create a confidential relationship in the absence of some recognition, acceptance, or undertaking of the duties of a fiduciary on the part of the other party." *Bankest Imports, Inc. v. ISCA Corp.*, 717 F. Supp. 1537, 1541 (S.D. Fla. 1989).

Here, Plaintiff contends that the Koifman Defendants owed a fiduciary duty in selling "80% of the Shares for the benefit of Selling Plaintiffs," as a broker.   Compl. ¶ 64.   However, Plaintiff elaborates elsewhere that this purported promise was "to invest approximately 80% of the value of the Shares into a campaign that would generate value for Plaintiffs by increasing the value of their remaining Shares." *Id.* ¶ 20.   In other words, Plaintiff does <u>not</u> contend that the Koifman

Defendants promised to sell shares owned by Selling Plaintiffs.[12] Rather, Plaintiff contends that the Koifman Defendants promised to sell their <u>own</u> Shares as part of a marketing campaign for the benefit of Selling Plaintiffs.

In this alleged arrangement, Plaintiff's purported assignor and the Koifman Defendants were arms-length parties. In an arms-length transaction, there is no duty to act for the benefit or protection of the other party. *See, e.g., Cripe v. Atlantic First National Bank,* 422 So. 2d 820 (Fla. 1982); *Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 540 (Fla. 5th DCA 2003) ("When the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other.").

Moreover, the fact that one party places its trust in the other does not create a confidential relationship in the absence of some recognition, acceptance, or undertaking of the duties of a fiduciary on the part of the other party. *Harris v. Zeuch*, 137 So. 135 (Fla. 1931). Plaintiff makes no allegation that, even if Plaintiff's purported assignor placed confidence in the Koifman Defendants, that the Koifman Defendants affirmatively undertook such confidence in return.

Accordingly, Count V must be dismissed.

**F.    Count VI Should Be Dismissed – Punitive Damages.**

Finally, Plaintiff asserts a "cause of action" for punitive damages "pursuant to Fla. Stat. § 768.72" based on intentional misconduct alleged elsewhere in the Complaint. Compl. ¶ 70. As an initial matter, punitive damages does not constitute a separate claim – rather, it is merely a form of relief. Moreover, as set forth *supra*, Plaintiff has failed to state a claim pertaining to any alleged misconduct that could potentially form any basis – much less a "reasonable basis" – of an award of punitive damages under Fla. Stat. § 768.72.[13] Accordingly, Count VI must be dismissed.

---

[12] Therefore, contrary to Plaintiff's suggestion, the Koifman Defendants were not acting as "brokers" to sell any shares still owned by Plaintiff's purported assignors. Moreover, even if the Koifman Defendants were acting in furtherance of the sale of Plaintiff's assignors' shares, there are no allegations that they were "brokers" for purposes of the federal securities laws. *See S.E.C. v. Kramer*, No. ___, 2011 WL 1230808 (M.D. Fla. Apr. 1, 2011) (identifying factors for determination of "broker" status).

[13] The Plaintiff alleges jurisdiction of this Court, based in part, under 28 U.S.C. § 1332, because of a conflict with citizens of different states, Complaint ¶ 12. As such, with respect to any claims based on state law, including claims for punitive damages, the substantive law to be applied is that of the State of Florida. *See Williams v. McFerrin*, 242 F.2d

## CONCLUSION

For the reasons set forth above, the Koifman Defendants respectfully request the Court to dismiss the Complaint in its entirety with prejudice, and award the Koifman Defendants such other relief that is necessary or appropriate.

Respectfully submitted,

/s/ William Nortman
William Nortman
Florida Bar Number: 242039
william.nortman@akerman.com
Jonathan S. Robbins, Esq.
Florida Bar Number: 989428
jonathan.robbins@akerman.com
Jeffrey T. Cook, Esq.
Florida Bar Number: 647578
jeffrey.cook@akerman.com
**AKERMAN SENTERFITT**
350 East Las Olas Blvd., Suite 1600
Fort Lauderdale, Florida 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
*Attorneys for Defendants Stock News Info. LLC*
*and Steven Koifman*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 30, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically.

/s/ William Nortman
William Nortman

---

53, 55 (5th Cir. 1957) (a court sitting in diversity applies the forum state's substantive law). *Williams v. McFerrin* is binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

CASE NO.: 9:11-cv-80764-MARRA

## SERVICE LIST

Stock Fraud Prevention, Inc. v. Stock News Info. LLC
Case No.:  9:11-cv-80764-KAM

| | |
|---|---|
| **Carlos E. Duque, Esq.**<br>103 Concord Avenue, Suite 2-2<br>Sommerville, MA  02143<br> tel:  317-270-3353<br>eduque4@gmail.com<br>*Attorney for Plaintiff* | **William Nortman, Esq.**<br>AKERMAN SENTERFITT<br>Las Olas Centre II, Suite 1600<br>350 East Las Olas Boulevard<br>Fort Lauderdale, Florida 33301-2229<br>Telephone: (954) 463-2700<br>Facsimile: (954) 463-2224<br>*Attorneys for Defendants Stock News Info. LLC and Steven Koifman* |
| **Jeffrey Carl Weinstein, Esq.**<br>Mittenthal Weinstein LLP<br>5499 N Federal Hwy., Suite K<br>Boca Raton, FL  33487<br>tel:  561-862-0955<br>fax:  561-862-0782<br>weinstein@mw-attorneys.com<br>*Attorneys for Plaintiff* | **Jonathan S. Robbins, Esq.**<br>AKERMAN SENTERFITT<br>Las Olas Centre II, Suite 1600<br>350 East Las Olas Boulevard<br>Fort Lauderdale, Florida 33301-2229<br>Telephone: (954) 463-2700<br>Facsimile: (954) 463-2224<br>*Attorneys for Defendants Stock News Info. LLC and Steven Koifman* |
| | **Jeffrey T. Cook, Esq.**<br>AKERMAN SENTERFITT<br>One Southeast Third Avenue, 25th Floor<br>Miami, FL 33131<br>Telephone: (305) 374-5600<br>Facsimile: (305) 374-5095<br>*Attorneys for Defendants Stock News Info. LLC and Steven Koifman* |

STOCK FRAUD PREVENTION, INC v. STOCK NEWS INFO. LLC, SKYLINE
INVESTMENTS, INC., STEVEN KOIFMAN and SCOTT WILDING
CASE NO.:  9:11-cv-80764-MARRA

## EXHIBITS

EXHIBIT A:        **Cylogic Aerospace** – Nevada Secretary of State Record of Revoked Status

EXHIBIT B:        **Crown Marketing, LLC** – South Dakota Secretary of State Record of
Inactive Status

EXHIBIT C:        **Complaint** – Sharp v. Cuba Beverage Company et al., Case No. 37-2011-
00090093-CU-FR-CTL (California Superior Ct. April 22, 2011)